UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| EDMOND JEROME CAFFEY, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | NO. 2:07-CR-61 |
| | ) | NO: 2:09-CV-197 |
| UNITED STATES OF AMERICA, | ) | |
|     Respondent. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner, Edmond Jerome Caffey ("petitioner" or "Caffey"), [Doc. 34]. Also pending is a motion to amend and supplement the § 2255 motion, [Doc. 38]. The motion to amend will be granted; however, for the reasons which follow, the Court had determined that the § 2255 motion will be DENIED as time-barred and this action will be DISMISSED.

Caffey was indicted by a federal grand jury on June 12, 2007, [Doc. 1]. He was charged with Hobbs Act robbery in violation of 18 U.S.C. § 1951 in Count One; with using and carrying a firearm during and in relation to a crime of violence, *i.e.,* the robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) in Count Two; and with being a felon in possession of a firearm in Count Three. He entered guilty pleas to Counts One and Two on August 20, 2007, pursuant to a negotiated plea agreement, [Doc. 8]. He was sentenced on April 14, 2008, to a term of imprisonment of 210 months and judgment was entered on April 23, 2008, [Doc. 27]. No direct appeal was taken.

Then, on September 10, 2009, almost 17 months later, Caffey filed the pending motion. Because the motion appeared to be barred by the one year statute of limitations contained in the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), and because a November 4, 2009 supplement to the motion, [Doc. 38], claimed that the motion should not be timed-barred, Caffey was ordered to supplement his filings with whatever affidavits, documentary evidence and/or argument he wished to present on the issue, [Doc. 45]. He has now done so, [Doc. 48], and the government has also responded, [Doc. 47]. For the reasons which follow, the motion to vacate will be DENIED.

The AEDPA establishes that state and federal prisoners have a one-year limitations period in which to file a *habeas corpus* petition. That period runs from one of four specified dates, the first of which is "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Generally, a conviction becomes final upon conclusion of direct review. *See Sanchez-Castellano v. United States*, 358 F.3d 424, 426 (6th Cir. 2004) (citing *United States v. Cottage*, 307 F.3d 494, 498 (6th Cir. 2002)). The Sixth Circuit has held that "when a federal criminal defendant does not appeal to the court of appeals, the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal was filed." *Id*. at 427. At the time relevant to this case, that period was ten days after the entry of judgment, excluding the day the judgment was filed and intermediate Saturdays and Sundays, or May 7, 2008. See Fed. R. App. P. 4(b)(1), 26(a) (2008). If § 2255(f)(1) applies to this case, Caffey's motion is time-barred.

Caffey advances two arguments to avoid the conclusion that his motion is time-barred. First, he argues that he did not meet the "in custody" requirement of § 2255 until March 31, 2009, and, thus, while in state custody was "unable to challenge the Federal sentence" because the Court "lacked jurisdiction" prior to that time. Caffey was sentenced, as set forth above, on April 14, 2008, and was returned to state custody to complete his state sentence on May 12, 2008. He was then returned to federal custody on March 31, 2009. By making this argument, Caffey apparently suggests that the one-year limitations

period began to run, not from the date on which the judgment of conviction became final pursuant to § 2255(f)(1), but from the date of his release from state to federal custody pursuant to § 2255(f)(2), which provides that the limitations period runs from the latest of "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action."

Caffey's first argument lacks merit because the Sixth Circuit has held that "[s]ection 2255 allows prisoners to petition their sentencing court to correct or invalidate sentences imposed upon them provided that they are 'in custody under a sentence of a court established by Act of Congress' and provided that they make their petitions prior to the expiration of a one-year statute of limitations." *Ospina v. United States*, 386 F.3d 750, 752 (6th Cir. 2004) (quoting 28 U.S.C. § 2255). Thus, "[a] prisoner is in custody for the purposes of § 2255 when he is incarcerated in either federal or state prison, provided that a federal court has sentenced him." *Id.* Pursuant to *Ospina*, the mere fact that petitioner was originally in state custody was not a bar to filing and this will not save his motion from being rendered untimely.

The other argument advanced by Caffey to avoid the time-bar of § 2255(f)(1) is that he is entitled to equitable tolling. The one-year of statute of limitations for filing a § 2255 petition is subject to equitable tolling. *See Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749-50 (6th Cir. 2011) (citing *Holland v. Florida*, - - U.S. - -, - -, 130 S. Ct. 2549, 2560, 177 L. Ed. 2d 130 (2010)). Petitioner bears the burden of demonstrating he is entitled to equitable tolling. *See McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003). "[T]he doctrine of equitable tolling is applied sparingly by federal courts" and is typically used only when "a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010); *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003).

3

Until recently, the Sixth Circuit used a five-factor inquiry to determine whether a *habeas* petitioner was entitled to equitable tolling. *See Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001). The Supreme Court's decision in *Holland* replaced the five-factor inquiry with a two part test, under which a *habeas* petitioner is entitled to equitable tolling only if the petitioner shows that (1) "he has been pursuing his rights diligently," and (2) that "some extraordinary circumstance stood in his way and prevented timely filing." *Hall*, 662 F.3d at 749 (citing *Holland* 130 S. Ct. at 2562). This test is analytically distinct from *Dunlap*'s five-factor inquiry. Whereas *Dunlap* sets forth a variety of factors for the courts to consider, not all of which are "necessarily comprehensive or always relevant," *Keenan v. Bagley*, 400 F.3d 417, 421 (6th Cir. 2005) (internal quotation marks omitted), *Holland* requires that a *habeas* petitioner demonstrate both that he has been diligent and that an extraordinary circumstance prevented him from timely filing. *Hall*, 662 F.3d at 750.

Caffey claims that extraordinary circumstances prevented timely filing here in three ways: (1) the state prison library did not have federal legal materials and he could not research his federal claims; (2) he has an 11th grade education and there was no one "knowledgeable in the law" to provide him legal assistance until he enlisted the aid of a "jailhouse lawyer" upon his arrival at the federal prison on May 28, 2009; and (3) he had no knowledge he could "challenge his federal sentence" or "that there was a statute of limitations." None of these circumstances entitle Caffey to equitable tolling.

First, limited or insufficient access to the prison's law library does not constitute a sufficient circumstance which justifies tolling of the one-year period. *See Maclin v. Robinson*, 74 Fed. App'x 587, 589 (6th Cir. 2003) (limited access to prison law library does not constitute a state impediment under 28 U.S.C. § 2244(d)(1)(B)); *United States v. Stone*, 68 Fed. App'x 563, 565 (6th Cir. 2003) (allegations of insufficient library access do not warrant equitable tolling); *Robinson v. Johnson*, 273 F.3d 1098, 2001

4

WL 1066893 (C.A. 5 (Tex.)) ("This court has also repeatedly held that an inadequate prison law library does not constitute a 'rare and exceptional circumstance' warranting equitable tolling.") (citing *Felder v. Johnson*, 204 F.3d 168, 171-73 (5th Cir. 2000); *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Fisher v. Johnson*, 174 F.3d 710, 713-14 (5th Cir. 1999)); *Rucker v. Bell*, 2008 WL 56025 (E.D. Tenn. Jan. 3, 2008) (collecting cases); *Grayson v. Grayson*, 185 F. Supp. 2d 747, 751 (E.D. Mich. 2002) (denial of access to legal materials is not an exceptional circumstance warranting equitable tolling).

Second, neither Caffey's limited education (11th grade), even illiteracy, nor his lack of access to legal representation is sufficient to equitably toll the statute of limitations. *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002); *Percy v. Birkett*, 2011 WL 2270896 (E.D. Mich. June 8, 2011) (citing *Wilson v. Birkett*, 192 F. Supp. 2d 763, 766 (E.D. Mich. 2002)). Indeed, there is no general right to legal representation to assist with the filing of a § 2255 motion. *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (Sixth Amendment right to assistance of counsel does not apply to collateral attacks). *See also* 18 U.S.C. § 3006A.

Finally, petitioner's ignorance of the law related to § 2255 and its statute of limitations does not constitute circumstances sufficient to warrant equitable tolling. As an initial matter, Caffey's claim that he had no knowledge of his § 2255 rights until he reached a federal prison is clearly contradicted by the record. As further discussed below, Caffey's plea agreement contained a waiver of "the right to file any motions or pleading pursuant to 28 U.S.C. § 2255 or to appeal or collaterally attack the conviction(s) or sentence." [Doc. 8 at ¶ 12(b)]. He confirmed, under oath, at his change of plea hearing that he had read and signed the plea agreement and understood all its terms and conditions. [Doc. 21 at 5-6]. Caffey was specifically questioned about the waivers at the hearing and he confirmed that he was aware of the waivers, had read "carefully" the paragraph containing the waivers and "fully discussed" the waivers

5

with his attorney. [*Id.* at 13-14]. Caffey is bound by his answers at the change of plea hearing and cannot now claim that he had "no knowledge" of his right "to challenge his federal sentence." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("the defendant is bound by his statements in response to [the] court's inquiry.") (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)).

Furthermore, the fact that a petitioner is unfamiliar with the law is insufficient to warrant equitable tolling. *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004); *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) ("even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling."); *Jones v. United States*, 304 F.3d 1035, 1044 (11th Cir. 2002) (citing *Felder*, 204 F.3d at 171-73 (holding that ignorance of law is insufficient basis for granting equitable tolling), *cert. denied*, 531 U.S. 1035 (2000)); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir.) (holding equitable tolling not warranted to prisoner claiming he lacked access to federal statutes and case law, and only learned of ADEPA's time limitations sometime after April 29, 1997), *cert. denied*, 525 U.S. 891 (1998).

Even if the Court found that some extraordinary circumstance prevented Caffey from timely filing, he cannot meet the other requirement of *Holland* by showing that he has been pursuing his rights diligently. By his own admission, Caffey was released to the federal detainer by state authorities on March 31, 2009, six weeks before his § 2255 petition was due, and arrived at FCI Beckley on May 28, 2009. Despite being transferred to federal custody on March 31, more than a month before the time for filing expired, Caffey still waited more than five months to file his § 2255 motion on September 7, 2009 (3 months after his arrival at FCI Beckley). *See Allen*, 366 F.3d at 404 (citing *Cook v. Stegall*, 295 F.3d 517, 518 (6th Cir. 2002) (tolling not appropriate where the petition was filed only one month late) and *Dunlap v. United States*, 250 F.3d 1001, 1010 (6th Cir. 2001) (holding petitioner not entitled to equitable tolling where petition was filed approximately two months late)). On the issue of his diligence, Caffey

6

might find some support in the Sixth Circuit's decision in *Solomon v. United States*, 467 F.3d 928 (6th Cir. 2006). In *Solomon*, the petitioner had been transferred to another facility where he was placed in administrative detention without his legal papers just a month before his § 2255 motion was due to secure his testimony at a trial. He then immediately took steps to notify the court of his transfer and his lack of access to legal materials and he filed a notice of his intent to file his petition. After his return to his prior location, Solomon filed the motion within a month.

*Solomon* is easily distinguished from the present case. None of the extenuating circumstances present in *Solomon*-transfer without his legal papers within a month of the filing deadline or administrative detention--are present in this case. Further, Caffey took no steps to notify the Court of his intent to file the motion, made no effort to contact the clerk, nor did he file his motion within a month of transfer to federal custody or even his arrival at Beckley. *See Hall*, 662 F.3d at 751-52. And, Caffey certainly cannot argue that he did not know how to contact the Court about these matters. Within two months of sentencing, Caffey wrote to the Court asking about whether his state time would be credited to his federal sentence, [Doc. 29], and contacted the Court three other times before he filed his § 2255 motion-- on November 21, 2008, [Doc. 31] (again about sentencing credits), on July 9, 2009, [Doc. 32] (requesting transcripts)[1] and then again on August 3, 2009, [Doc. 33] (asking about the reason his attorney, Tim Moore, had withdrawn). He never mentioned his intent to file a § 2255 motion in any of that correspondence or that he was having any difficulty gaining access to any of the materials needed to file. Caffey simply cannot carry the burden of showing that he acted diligently in pursuing his rights.

There is a second reason, however, why petitioner cannot proceed with his motion. In his plea

---

[1] Per the Court's docket entry, transcripts, the plea agreement and Caffey's attorney's address were provided to him by return mail the same date.

agreement, [Doc. 8], Caffey "waive[d] the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to appeal or collaterally attack the conviction(s) and/or resulting sentence" on all grounds except for "claims of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant *by the time of the entry of judgment*." [*Id*. at ¶ 12(b)].

The Sixth Circuit has held that plea agreement waivers of § 2255 rights are generally enforceable, and a knowing, intelligent and voluntary waiver of the right to collaterally attack his sentence forecloses Caffey's right to bring a § 2255 petition. *Davila v. United States*, 258 F.3d 448 (6th Cir. 2001). *See also Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999) (holding that "a defendant's informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars such relief."); *Hunter v. United States*, 160 F.3d 1109, 1113 (6th Cir. 1998) (holding that a waiver provision in a plea agreement is binding so long as it is made knowingly and voluntarily). Caffey does not claim that his waiver was other than knowingly, intelligently and voluntarily made. The waiver was plainly set out in paragraph 12 of the plea agreement, which Caffey swore he had read and understood. In responding to the Court's questions about the rights waiver at the change of plea hearing concerning whether Caffey understood the rights he had agreed to waive by entering into the waiver provisions of the plea agreement, Caffey affirmatively and unequivocally responded that he had read the waiver, understood it and had fully discussed it with his lawyer. A review of the transcript clearly establishes that the waiver was knowingly and voluntarily made.

Caffey generally makes claims of ineffective assistance of counsel as follows in his supplemental motion:

> 1) Counsel failed to notify petitioner of a conflict of interest which arose after counsel advised then allowed petitioner to accept a plea agreement with the government.
> (was Ground One of original)

8

  2) Failure of counsel to challenge the suggestivity of the one man lineup.
    (was Ground Two of original)
  3) Failure of counsel to challenge the suffiency of the of the evidence .
    (was Ground Three of original)
  4) Failure of counsel to challenge the stop of Petitioner at its inception.
    (was Ground Four of original)

[Doc. 38-1 at 102].

All of these claims, except, arguably, the first, fall clearly within the scope of the waiver and are matters which were known to Caffey at the time of the entry of judgment on April 23, 2008. With respect to the first issue raised, Caffey alleges that he was never told that his first attorney, Tim Moore, had a conflict of interest in representing him. He alleges that, after signing the plea agreement, Moore moved to withdraw, and that neither Moore nor successor counsel "consult[ed] with the Petitioner about this issue." Had they done so, Caffey argues, this "may have lead [sic] petitioner to withdraw or renegotiate his plea agreement or even ask for a jury trial which in itself is protected under the Constitution."

The record establishes that both Caffey and counsel signed the plea agreement on August 1, 2007. He entered his guilty pleas on August 20, 2007, represented by Moore. On November 15, 2007, Moore moved "to withdraw given the conflict of interest that has arisen and appoint substitute CJA counsel to represent Mr. Caffey." [Doc. 12]. The motion was supported by Moore's declaration, [Doc. 14], and was granted on November 29, 2007. [Doc. 13]. In the same order, the Magistrate Judge appointed attorney Sandra Jelovsek to represent petitioner and she did so through the conclusion of the proceedings against him in this Court. Caffey clearly knew about Moore's withdrawal long before the judgment was entered

in this case and the Court finds that this claim too is covered by the waiver.[2] Accordingly, petitioner's § 2255 motion will be DENIED and the matter DISMISSED.

Finally, the Court considers whether a certificate of appealability should issue in the matter. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each claim raised.

A separate order will enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

---

[2] Caffey also complains that he was never told about the reason for the conflict of interest. Moore's affidavit, filed under seal, simply recites that he has learned from another client whom he represents that that client wishes to provide cooperation information against Caffey. As a result, Moore believed he had a conflict of interest and moved to withdraw from representing both Caffey and the other client.